(No. 4527—

STEVE A. SYPNIEWSKI, A MINOR, BY CELIA SYPNIEWSKI, HIS MOTHER AND NEXT FRIEND, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 23, 1954.*

ELLIODOR M. LIBONATI, Attorney for Claimant.

LATHAM CASTLE, Attorney General; MARION G. TIERNAN, Assistant Attorney General, for Respondent.

WHAM, J.

This case involves a claim for recovery under Article XVI, Section 11 of the Military and Naval

Code of Illinois, Ill. Rev. Stat., 1949, (State Bar Association Edition), Chap. 129, Par. 143.

On July 31, 1949, the claimant, Steve A. Sypniewski, was a member of the 33rd Ordnance Company, 33rd Infantry Division of the Illinois National Guard, and held the rank of Private First Class. The National Guard Division and its members were on regular maneuvers, engaged in actual field training at Camp McCoy, Wisconsin; and were at that time federally recognized, and engaged in such training under the provisions of the National Defense Act.

On the morning of the day in question, claimant, who had been assigned to kitchen police duty, had finished a part of that duty, and was not scheduled to report back until the evening meal. He and two companions decided to go for a hike in the woods on the military reservation, and, while so engaged, saw a hand grenade partly embedded in the dirt. He touched it, and the grenade exploded, causing serious injuries to claimant. The complaint filed herein prays damages in the amount of $10,000.00 against the State of Illinois, based upon the alleged loss of the thumb and index finger of claimant's right hand, loss of practically all of the sight of claimant's left eye, and other injuries enumerated in a general manner; and allegagations of medical expenses, incurred in the past, and to be incurred in the future.

The record of the Adjutant General of Illinois, contained in respondent's exhibit No. 1, and all of the facts in the record establish that claimant was in the line of duty at the time of the accident in question, which fact was conceded by respondent at the hearing. Such records, and the testimony offered in the case further establish that claimant was not injured by

reason of any willful neglect or misconduct on his part. There are no facts shown in the record of this case, which establish any unlawful act on the part of claimant. Whether or not he was in the complete exercise of due care in touching the hand grenade is not an issue in determining whether recovery can be had under the statute in question.

It is likewise immaterial that claimant, due to his being in the service of the United States at the time of the injury in question, has a remedy under the provisions of Public Law 108, 32 U.S.C.A., Sec. 160 (a) through (c). The question has been previously resolved in favor of claimant by the Court's decision in this cause, which was filed on March 20, 1953.

One serious question raised by respondent deals with the meaning that should be given to the provision of the Military and Naval Code, wherein, as a condition to recovery under Section 11 of said Code, it is required that the injury to claimant must have occurred "while performing his duty as an officer or enlisted man in pursuance of orders from the Commander-in-Chief".

Respondent urges, and, in our judgment, rightly so, that the Legislature had in mind a more strict requirement for recovery under this Section than a mere line of duty status. If such had been the intention of the Legislature, it is reasonable to assume they would have used that language, rather than those terms contained in the statute set forth above.

It is conceivable that a person may occupy a line of duty status, while not performing "his duty as an officer or enlisted man in pursuance of orders from the Commander-in-Chief", for instance, while on leave of absence or furlough for personal reasons. On the other hand, a line of duty status is a necessary condition to

a finding that he was so performing his duty in pursuance of such orders.

Respondent argues that, at the time claimant received his injuries, he was participating in a "frolic of his own", and was not performing his duty under orders, since he had not been assigned to accompany the other guardsmen to the place where the accident occurred, and had the right to refuse to accompany them, if he so desired.

Claimant, however, contends that the facts involved not only show claimant to have been injured while in the line of duty, but, also, while performing his duty in pursuance of orders from the Commander-in-Chief.

We find no previous decisions in point. This presents a close question. It is one that calls for a determination of policy, which will reasonably give effect to what we consider the intent of the Legislature in enacting the Military and Naval Code. It is one that, in determining the result on the particular facts, requires a consideration of the degree of meaning, which should be given to the terms involved.

The term "performing his duty as an officer or enlisted man in pursuance of orders from the Commander-in-Chief" could be held to mean simply being on active duty. This, in our judgment, is a broader construction of the term than the Legislature intended.

On the other hand, the term could be held to mean that the guardsman must be actually engaged in performing precisely the physical acts ordered done, and only those acts necessary in complying with each particular order given. For example, in the case at bar, claimant, under such a meaning of the term, would only be covered by the law while actually engaged in pre-

paring the food, washing the kitchen utensils, carrying out the garbage, cleaning the floor, etc., and would not be covered while engaged in a five minute "break" to smoke a cigarette. Obviously, the Legislature intended no such narrow construction of the term.

Somewhere between these two extremes lies the answer to the problem, and the test that should be applied.

The admitted facts consign this case to a position on the border line of the question, but we have concluded, after much consideration, that claimant was performing his duty as an enlisted man in pursuance of orders from the Commander-in-Chief at the time of his injuries, and should be allowed to recover under Section 11 of the Military and Naval Code.

The facts, which we consider to justify this result, are these: (1) It is conceded by both parties to this action that claimant was in the line of duty when he sustained the injuries; the records of the Adjutant General of the State of Illinois reflect such a finding by the military authorities; and, the facts contained in the record of this case are not of such a nature to require our overruling such findings. (2) Claimant had not completed his kitchen police assignment, was still assigned under orders to that particular duty, and was expected to report for further work in the kitchen at the evening meal. (3) Claimant was upon the military post when he received his injuries, and was subject at all times to being recalled for further work. (4) By the nature of the duty to which claimant was assigned, it was contemplated by the authorities that claimant would not be continuously engaged throughout his assignment to said duty in performing actual work in the kitchen, but would, of necessity, have a certain

amount of free time during his assignment to kitchen police duty, and while still subject to call for further work.

Respondent also contends that, by virtue of the interpretation given Sections 10 and 11 of the Military and Naval Code by the Court in the case of *Insalata* vs. *State of Illinois*, 12 C.C.R. 27, this Court can take no jurisdiction of the case, for the reason that claimant has failed to exhaust his remedies under Section 10 of the Code, and that Section 11 of the Code can only be applied after the remedies afforded by Section 10 have been exhausted.

These two Sections, as constituted at the time of the occurrence of the accident, read as follows:

"¶10. Any officer or enlisted man of the National Guard or Naval Reserve, who may be wounded or disabled in any war, while on duty and lawfully performing the same, so as to prevent his working at his profession, trade or other occupation from which he gains his living, shall be entitled to be treated by an officer of the medical department detailed by the surgeon general, and to draw one-half his active service pay, as specified in Sections 3 and 4 of this article, for not to exceed thirty days of such disability, on the certificate of the attending medical officer; if still disabled at the end of thirty days, he shall be entitled to draw pay at the same rate for such period as a board of three medical officers, duly convened by order of the Commander-in-Chief, may determine to be right and just, but not to exceed six months, unless approved by the State Court of Claims.

¶11. In every case where an officer or enlisted man of the National Guard or Naval Reserve shall be injured, wounded or killed while performing his duty as an officer or enlisted man in pursuance of orders from the Commander-in-Chief, said officer or enlisted man, or his heirs or dependents, shall have a claim against the State for financial help or assistance, and the State Court of Claims shall act on and adjust the same as the merits of each case may demand. Pending action of the Court of Claims, the Commander-in-Chief is authorized to relieve emergency needs upon recommendation of a board of three officers, one of whom shall be an officer of the medical department."

The case of *Insalata* vs. *State of Illinois*, supra, involved an injury to a guardsman, who, the Court found, showed an unwillingness to avail himself of the medical and dental services provided for members of the Illinois National Guard. A claim was filed in the

Court of Claims under the provisions of Section 11 of the Code. No action was taken under Section 10 of the Code. The Court, in denying the claim, stated at pages 30 and 31:

"If both Sections 10 and 11 automatically become applicable to claims of this kind, then two separate tribunals might at the same time be called upon to adjust the same claim. This Court has held that such was not the intent of the Legislature. (*Echols* vs. *State of Illinois*, supra.) It appears rather, that the Legislature intended that Section 11 should provide for additional financial help or assistance in cases where such is justified. In other words, Section 10 is first to be applied so that the injured claimant may have one-half of his active service pay and medical services. If his disability is serious enough, Section 10 provides for a continuance of one-half pay and medical services for a period not to exceed six months unless approved by this Court. If the disability exceeds six months, claimant may invoke the jurisdiction of this Court, and show his need for financial help and assistance in addition to that provided for by Section 10. To say that Section 11 gives this Court unlimited jurisdiction, regardless of the provisions of Section 10, is contrary to the general rules of statutory construction. Section 11 supplements, and provides for further possible help and assistance, but it does not supersede Section 10. Furthermore, the financial need of the claimant can only properly be determined by this Court when it has knowledge of the proceedings had under Section 10, and the payments made in accordance therewith."

## And, at page 32:

"Legislative provisions for a preliminary inquiry, such as is provided for in Section 10, are fully within the legislative province. *Bangs* vs. *State of Illinois*, 10 C.C.R. 127; *Blue* vs. *State of Illinois*, 10 C.C.R. 200. It is our opinion, from a consideration of Sections 10 and 11 of the Military and Naval Code, that a claimant, before invoking the jurisdiction of this Court, must show:

(1) What payment has been made to him on the certificate of the attending medical officer of one-half active service pay.

(2) What payment has been made to him by order of the board of medical officers of one-half active service pay.

(3) What medical services have been furnished to him.

(4) What need exists for financial help or assistance, in addition to the one-half active service pay and medical services already furnished.

There being no proof in this case of a compliance with the provisions of Section 10 of the Military and Naval Code, this Court is without jurisdiction. *Echols* vs. *State of Illinois*, supra."

We have considered these two sections of the Code, and also the above decision, and can see no reason to follow that decision in the instant case.

In the first place, claimant has received all of the necessary medical treatment from the State and Federal Governments, and is making no claim or request for further medical treatment. Although both past and future medical expenses are claimed as damages in the complaint, no evidence of such appears in the record, nor is there any mention or claim for same made by claimant in his brief and argument. Claimant, likewise, has made no claim for one-half of his active service pay, which he would have been allowed by the provisions of Section 10 of the Code. He .claims only damages for permanent personal injuries, which have handicapped his advancement in an occupation that he entered subsequent to the injury. Financial help and assistance for these items of damage, in our judgment, should be awarded under Section 11, rather than Section 10.

It appears to us that to deny claimant the right to a recovery under Section 11, merely because action was not formally taken by the military authorities under Section 10, would be to place more regard on following a certain line of procedure, than in accomplishing a just result, and would be in discord with what we consider the Legislative intent to have been.

Furthermore, it is noted from the record (respondent's exhibit No. 1) that on October 25, 1949, shortly after his release from the hospital, claimant forwarded a letter to the Adjutant General of the State of Illinois, through military channels, requesting information regarding the procedure to be followed in making a claim for disability compensation, stating that he was unable to find suitable employment. There is nothing anywhere in the record, which indicates any lack of cooperation on the part of claimant, or a lack of interest in

pursuing the matter. What else claimant could have done, we do not know. There is no procedure prescribed by Section 10 of the statute for claimant to have followed in forcing action thereunder. The initiative, it seems to us, for obtaining action under Section 10 of the Code rests upon the military authorities. We do not intend to penalize claimant for inaction on the part of any other person. We do not, however, mean to imply that the military authorities should or should not have taken action, since that question is not now before the Court.

We now direct our attention to a consideration of the amount claimant should receive under the provisions of Section 11 of the Military and Naval Code.

In arriving at the amount, we note from the evidence that claimant, prior to his injuries, had last been employed at a tea room in Chicago, earning $25.00 a week. After the accident, and subsequent to treatment for his injuries at the Great Lakes Naval Hospital, he was next employed the latter part of December, 1949 as a mail clerk baggage handler for the Illinois Central Railroad at $60.00 per week, where he worked for approximately one and one-half months. He again worked for approximately six months at the tea room at $25.00 a week, and, thereafter, for Master Specialties Company in Chicago, where he earned $1.25 an hour. Shortly thereafter, claimant went to California to continue his employment with this Company, and, while in California, was also employed by North American Aviation Company at $1.50 per hour. While in California, his work consisted of machine work on jigs and small dies, riveting, and general finishing work. He then returned to Chicago, and obtained employment as a machinist with the Pullman Standard Company

at $1.65 per hour, where he is still employed at the present time, now earning $1.91 per hour. In 1950 and 1951 he attended Chicago Vocational School, studying the precision machinist trade. He contends that, although he is able to perform the duties of a machinist, he cannot become a precision machinist, because of the defective sight in his left eye, and loss of the right thumb and forefinger.

The evidence shows that claimant had worn glasses three or four years prior to the accident in question for reading and close work. Respondent's exhibit No. 1 contains a report of the physical examination at the place of enlistment on April 15, 1948, which shows claimant to have a 20/20 vision without correction. Claimant testified that, since the accident, he is unable to see through his left eye without glasses; and, that with glasses he can "almost make people out" at a distance of approximately five or six feet.

After the hearing in the case, claimant was examined by Dr. Thadd F. Bush, and, by agreement of the parties, the report of Dr. Bush was filed, and made a part of the record in this case. The report of Dr. Bush reads as follows:

"Mr. Steve A. Sypniewski presented himself at this office on June 20, 1953 stating that, while in the military service at Camp McCoy, Wisconsin on July 31, 1949, a dud hand grenade was detonated in his hand by accident, burning his face, injuring his right hand and left eye, and otherwise incurring bodily injury.

Following this episode he had been cared for by the military medical personnel in the vicinity of Camp McCoy, and to date he yet experiences considerable visual disturbances in his left eye.

Upon examination, the right eye was determined to be essentially normal with the following refractive finding: the visual acuity without correction was 20/70, and was correctible to 20/30 + 3 by a minus 1.50 sphere plus 0.75 cylinder at axis 90. The left eye showed evidence of superior medial ophthalmic venous engorgement with signs of an old healed mild peridiscoid proliferative retinitis with some evidence of vitreous clouding and an occasional molluscae. There was a slight peripheral visual constriction within 5 to 10 degrees, and some pallor of the disc. Other findings were absent with the exception of the following refractive

error. Visual acuity without correction was 20/200 correctible to 20/70 plus 1 by a minus 8.25 sphere plus 0.50 cylinder axis 80.

The visual acuity in both eyes is decidedly substandard, and that in the left eye is strictly poorer than that of the right eye."

Included in respondent's exhibit No. 1 is a report of William F. Kuhn, II, Lt. Col. M.C., Chief of Surgical Service, which states that claimant by virtue of the explosion, suffered 100% loss of the terminal phalanx of his right thumb, and 100% loss of the terminal and middle phalanges of his right index finger.

Claimant testified that the other incidental injuries received at the time of the explosion no longer bothered or affected him. Claimant, at the time of the hearing, was a married man.

The Court has many times used the Workmen's Compensation Act as a guide in arriving at an award in a case of this type. Although we are not bound by the Act, we believe that in this case it should form the basis for an award. It seems especially appropriate, inasmuch as the accident was due to no fault on the part of respondent, and, in our judgment, a lack of due care on the part of claimant. The facts indicate that claimant has been steadily employed ever since returning to work after his wounds had healed. However, there is no question but what his earning capacity has been affected by the injuries he received, which injuries are permanent.

Applying the 1949 Illinois Workmen's Compensation Act, we find that claimant has suffered 100% disability of his right thumb, which would entitle him to an award of $1,575.00 under the Compensation Act for such loss. We further find that under the Compensation Act he has suffered a 100% disability of his index finger, for which, under the Act, he would be entitled to receive the sum of $900.00.

The examination of Dr. Bush reflected the visual acuity of claimant's left eye, without correction, as being 20/200, which is generally regarded by the Industrial Commission as constituting industrial blindness. The examination further reflects that said eye was correctible to 20/70. We will, however, follow the most general rule applied by the Industrial Commission in Workmen's Compensation cases, namely, that the test for defective vision is made on an uncorrected basis. Considering a complete loss of the left eye, under the 1949 Illinois Workmen's Compensation Act claimant would be entitled to receive $2,700.00 for the loss of said eye.

It is, therefore, our order that claimant be, and he is hereby awarded the sum of Five Thousand One Hundred Seventy-Five Dollars ($5,175.00).